UNITED STATES of America,
Plaintiff-Appellee,

v.

Karen Denise ROARK,
Defendant-Appellant.

No. 83–8846.

United States Court of Appeals,
Eleventh Circuit.

Feb. 22, 1985.

Rehearing and Rehearing En Banc
Denied April 23, 1985.

Reuben H. Yancey, Valdosta, Ga., Bruce H. Morris, Robert H. Citronberg, Atlanta, Ga., for defendant-appellant.

Deborah Griffin Fowler, Asst. U.S. Atty., Macon, Ga., for plaintiff-appellee.

Before RONEY and ANDERSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

RONEY, Circuit Judge:

Karen Denise Roark was convicted of bank robbery and conspiracy. She raises three issues on appeal: first, whether her Miranda rights were violated; second, whether the testimony of an expert psychiatric witness was erroneously excluded; third, whether the acquittal of Roark's only alleged co-conspirator in a separate trial compelled a dismissal of the conspiracy charge against her. Although we find no error on the first and third issues, we reverse the convictions because testimony of the defendant's expert witness was relevant to Roark's defense and should have been admitted at her trial.

Karen Roark was the head teller at the drive-in branch of the First State Bank and Trust Company of Valdosta, Georgia. On May 26, 1983, she gave a bag containing $128,000 to the driver of a white Camaro in her drive-in lane, after receiving a note demanding money and indicating that a bag accompanying the note contained a bomb.

*Miranda*

Roark was questioned the afternoon of the robbery and again the next day by FBI Agent Sparks and Valdosta Police Captain Register. Initially, Roark was treated as a victim in the case. Roark was given *Miranda* warnings about noon the day after the robbery, however, when suspicion began to focus on her shortly after she implicated herself with contradictory statements. At that time, Roark was told to drive to the Valdosta Police Station after she agreed to take a polygraph examination. The polygraph examiner again advised Roark of her *Miranda* rights but during the preliminary questioning Roark made further incriminating statements. She also wrote out a handwritten and signed confession. Her statements and confession revealed that the man to whom she gave the money was her boyfriend, Ezekiel Cumbess, with whom the crime had been pre-arranged.

Roark then accompanied Agent Sparks and Captain Register to her apartment where an unsuccessful search for the stolen money was conducted. After the search the polygraph examination was given, the results of which were not in evidence at trial. All questioning ended and Roark was placed under arrest at approximately 8:30 p.m.

The statements she made were admitted into evidence through the testimony of the agent. She was convicted of conspiracy with and as a robbery accomplice of Ezekiel Cumbess.

Roark contends that her inculpatory statements were inadmissible because they were involuntary and that she should have been given the *Miranda* warnings earlier in the interrogation. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), requires that a person be advised of constitutional rights before a "custodial" interrogation. It reflects the concern that the compulsive or coercive aspects of a custodial situation will cause a suspect to confess or to make incriminating statements involuntarily, not knowing of the Fifth Amendment protection against re-

quired self-incrimination. *United States v. Henry*, 604 F.2d 908 (5th Cir.1979). *See also Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976). *Miranda* made clear that "[a]ny statement given freely and voluntarily without any compelling influences" is admissible. 384 U.S. at 478. More important to the instant case, *Miranda* declared itself inapplicable to "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process...." 384 U.S. at 477, 86 S.Ct. at 1629. That is just the situation here.

Roark was the head teller of the First State Bank's drive-in branch. She reported that she had been robbed. The investigating officers had no reason to suspect her of any complicity in their initial questioning the afternoon of the robbery. She was again interviewed that next morning at the bank as the victim of the robbery. Only after her inculpatory statements did she become a suspect and focal point of the agents' investigation. At that time she was read her *Miranda* rights. That the agents would be slow to realize she was a suspect, rather than a victim, is understandable under these facts.

The District of Columbia Circuit was faced with a similar situation in *United States v. Thompson*, 463 F.2d 1258 (D.C. Cir.1972). There the defendant reported that he had been robbed along with the complaining witness. He later made incriminating statements when being interviewed at his home. Declaring that no custodial interrogation had taken place, the court stated that where one involved in a crime starts out by claiming to be a victim and winds up later being a suspect and finally a defendant, an appellate court "cannot require the police to disbelieve an individual's story which he repeatedly insists is truthful." 463 F.2d at 1259.

Until Roark brought suspicion upon herself by mentioning a dubious and conflicting tale of extortion, Agent Sparks and Captain Register had no reason to believe she was actually involved in the crime. The fact that her story was somewhat confusing even before she mentioned the purported extortion threat is not significant. Even truly innocent victims can get confused over details.

As the *Thompson* court said:

> [t]he police are to be commended for fully checking out all leads rather than arriving at a premature conclusion of guilt. Some suspects are absolved when their story is fully investigated. Some suspects are also good actors and bearing in mind that the police must prove their case beyond a reasonable doubt, they should not be blamed for leaving no stone unturned before they arrive at the very serious decision to charge a person with the commission of a serious felony. They should not be placed in the position of practically being required to accuse every person they interview who has any close knowledge of a crime.

463 F.2d at 1259–60.

■ We affirm the district court's decision that Roark was not in "custody" until her *Miranda* rights were given. She was interviewed at her place of employment, was not placed under arrest or told not to leave, and was not threatened or coerced in any manner.

There is no merit to the contention that Roark's inculpatory statements and confession should not have been admitted into evidence because they were involuntarily given. After a pretrial evidentiary hearing on the question of voluntariness, the court admitted the evidence without a formal ruling. *United States v. Medina*, 552 F.2d 181 (7th Cir.), *cert. denied*, 434 U.S. 839, 98 S.Ct. 132, 54 L.Ed.2d 102 (1977). The evidence was properly admitted as being found voluntary. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); 18 U.S.C.A. § 3501.

■ In analyzing the voluntariness of a confession, the totality of the circumstances surrounding the confession must be examined. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36

L.Ed.2d 854 (1973). There is no indication that Roark underwent any physical or psychological treatment sufficiently improper to make the evidence inadmissible. The evidence was properly submitted to the jury.

### The Expert Witness

Once submitted, however, the jury may give the confession whatever weight it "feels it deserves under all the circumstances." 18 U.S.C.A. § 3501(a). In support of her involuntariness claim, Roark attempted to submit an expert psychological witness, Dr. Cabrera-Mendez, to testify on her behalf. His testimony was excluded by the district judge after an *in camera* examination on the second day of the trial.

Had he been allowed to testify, Dr. Cabrera-Mendez would have testified that Roark was extremely susceptible to suggestions and that someone with her level of suggestibility could be "suggested" into making up untrue stories. At his deposition, Dr. Cabrera-Mendez testified that the conditions of Roark's interrogation (small room, authoritative figures asking questions) made it very possible that she would create stories to please her questioners, a condition known as "compulsive compliance." He suggested that Roark would actually be in a state of hypnosis under those conditions, and that she would "have to comply" with the suggestions put forward by authoritative figures. Roark's handwritten confession was seen as being characteristic of her highly suggestible personality.

The trial court did not state a legal evidentiary reason for excluding Dr. Cabrera-Mendez's testimony. At the pretrial chamber conference, the trial judge stated: "I don't think the doctor's testimony will assist the jury in deciding the issue of who to believe, which is what we're really here for.... It's a credibility choice between witnesses."

Questions of admissibility of expert testimony are governed by the Federal Rules of Evidence. Rule 702 states that:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert ... may testify thereto in the form of an opinion or otherwise.

The key standard is "assisting the trier." Fed.R.Evid. 702 advisory committee note. Of course, the fact involved must be relevant. Fed.R.Evid. 401 states that " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Dr. Cabrera-Mendez's testimony was to be directed toward a fact at issue: whether Karen Roark voluntarily inculpated herself in the robbery. As a medical doctor specializing in psychiatry, he was presumably qualified to assist the jury in reaching a factual conclusion. His testimony was designed to help the trier of fact determine whether it was more or less probable that Roark was somehow psychologically coerced into making the inculpatory statements. His testimony was thus certainly relevant to the issue of what weight the jury should give Roark's incriminating statements.

Even though relevant, evidence may be excluded by the trial court "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. The major function of Rule 403 is "limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. McRae*, 593 F.2d 700, 707 (5th Cir.), *cert. denied*, 444 U.S. 862, 100 S.Ct. 128, 62 L.Ed.2d 83 (1979). In our judgment, Dr. Cabrera-Mendez's testimony can not reasonably be said to fall into this category. Whether Dr. Cabrera-Mendez's testimony will be persuasive is for the jury. Yet it cannot be said that it is of such "scant or cumulative probative force" that it must be kept from the jury. We do not

hold that this kind of testimony is always admissible in every confession case, but there appears to be no legally articulable reason for forbidding the introduction of Dr. Cabrera-Mendez's testimony.

The refusal to admit this testimony does not appear to be harmless error. Fed.R. Civ.P. 61 provides that even erroneous admissions or exclusions of evidence cannot be reversed unless "inconsistent with substantial justice." Furthermore, Fed.R. Evid. 103 states that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected...."

A review of the record does not establish that Dr. Cabrera-Mendez's testimony could not have affected the jury's verdict. It is possible the jury would have been sufficiently swayed by his testimony to find Roark's statements untrustworthy. The conviction could well have rested on which of Roark's incriminating statements the jury believed. Dr. Cabrera-Mendez's testimony should have been admitted.

### The Acquittal of Roark's Co-Conspirator

The argument that the acquittal of Roark's co-conspirator requires a reversal relates only to the conspiracy conviction, for which she received a five-year sentence to run consecutively with the twenty-year sentence for robbery.

Ezekiel Cumbess, Roark's boyfriend, was her only indicted co-conspirator in the robbery. Their trials were severed to avoid a *Bruton* problem. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Roark was tried first and found guilty on all counts. To avoid prejudice the verdict, received while the Cumbess trial was in progress, was not published.

At Cumbess' trial Roark was produced as a Government witness. She refused to testify at first, even when threatened with contempt. After later conferring with counsel, who informed her the Government was planning on introducing statements not mentioning Cumbess by name but indi-

rectly implicating him any way, Roark decided to testify. What she testified to was in contradiction to her testimony in her own prior trial. She claimed the man she gave the money to was not Cumbess and that she had never discussed a robbery with him. She denied ever making the statements incriminating Cumbess and herself. In large part because of Roark's testimony the trial judge directed a verdict of acquittal for Cumbess on the conspiracy count at the end of the Government's case.

Because Roark's only indicted co-conspirator was acquitted of conspiracy, she claims her conspiracy conviction must be overturned because "it is impossible ... for a man to conspire with himself." *Morrison v. California*, 291 U.S. 82, 92, 54 S.Ct. 281, 285, 78 L.Ed. 664 (1934). Had Cumbess and Roark been tried before the same jury with the same evidence being produced, a not guilty verdict on the conspiracy count as to one defendant would necessarily preclude the other's conviction. *See United States v. Sheikh*, 654 F.2d 1057 (5th Cir.1981), *cert. denied*, 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982); *United States v. Klein*, 560 F.2d 1236 (5th Cir.1977), *cert. denied*, 434 U.S. 1073, 98 S.Ct. 1259, 55 L.Ed.2d 777 (1978).

Such was not the case here. Different juries heard differing evidence. That distinction places this case within the parameters of *United States v. Espinosa-Cerpa*, 630 F.2d 328 (5th Cir.1980). There, the Court held a defendant may be convicted of conspiracy even if his alleged co-conspirators are acquitted where the co-conspirators were tried before separate juries with separate presentations of different evidence. 630 F.2d at 331–33. *See also United States v. Raffone*, 693 F.2d 1343, 1348–49 (11th Cir.1982), *cert. denied*, 461 U.S. 931, 103 S.Ct. 2094, 77 L.Ed.2d 303 (1983). Different juries may rationally come to different conclusions, especially when differing evidence is presented. In the instant case, Roark's jury heard her testify that she made incriminating statements including a handwritten confession,

**996**

but only after she received alleged threats from the interrogating agents. She denied ever even making such statements when testifying at Cumbess' trial.

Roark attempts to distinguish *Espinosa-Cerpa* on the ground that rather than a jury verdict, the trial judge directed a verdict of acquittal for Cumbess. Like a jury, however, the trial judge was bound by the record evidence in ruling on the motions for acquittal in each case. That the evidence was insufficient to support a guilty verdict in the one case does not mean that conviction on different evidence in another case was improper. "While symmetry of results may be intellectually satisfying, it is not required." *Standefer v. United States,* 447 U.S. 10, 25, 100 S.Ct. 1999, 2009, 64 L.Ed.2d 689 (1980).

The defendant is entitled to a new trial because relevant evidence offered on behalf of the defendant was improperly excluded.

REVERSED and REMANDED.