**UNITED STATES of America, Appellee.**

v.

**0.161 ACRES OF LAND, MORE OR LESS, SITUATED IN THE CITY OF BIRMINGHAM, JEFFERSON COUNTY, ALABAMA, et al., Appellants.**

No. 87–7141.

United States Court of Appeals, Eleventh Circuit.

Feb. 19, 1988.

Charles E. Sharp, Sadler, Sullivan, Sharp & Stutts, P.C., Paul L. Sotherland, Birmingham, Ala., for appellants.

William C. Knight, Jr., Birmingham Bar Ass'n, L. Drew Redden, Birmingham, Ala., amicus curiae for Birmingham Bar Ass'n.

Frank W. Donaldson, U.S. Atty., Caryl P. Privett, Asst. U.S. Atty., Vicki L. Plaut, U.S. Dept. of Justice, Jacques B. Gelin, Washington, D.C., for appellee.

Before HILL and EDMONDSON, Circuit Judges and ARONOVITZ[*], District Judge.

ARONOVITZ, District Judge:

This appeal involves the district court's refusal to admit evidence in a jury condem-

---

[*] Honorable Sidney M. Aronovitz, U.S. District Judge for the Southern District of Florida, sitting by designation.

nation trial for land taken to build a new federal courthouse in downtown Birmingham, Alabama. Also raised are issues accompanying the inevitable docket conflicts which arise between state and federal courts when attorneys have conflicting trial appearances in these courts.

### Conflict in Trial Dates

The concerns raised by the first issue pressed on appeal are sure to reoccur with increasing frequency in our litigious society. Although the number of attorneys has increased significantly over the past decade, the explosion of cases filed and proceeding to trial has, remarkably, left each individual attorney with greater obligations and increased caseloads. This deluge has also made it much more difficult for courts to balance the needs for dispatch and increased efficiency in caseload management, against the sometimes conflicting requirement that such efficiency be without substantial prejudice to the parties. When imbalance results, attorneys may have conflicting and overlapping obligations which require them to be, literally, in two courtrooms at the same time.

Following the pretrial conference on June 26, 1986, the District court set this matter for trial on September 2, 1986. Several days later, the attorney for the property owners, Charles Sharpe, Esq., advised the court of a trial conflict, and asked that trial be continued for one week. This was granted, but then the Assistant United States Attorney, Caryl Privett, requested the court to continue trial again. The court then set trial for Monday, September 29, 1986, with jury selection only on Monday, September 22, 1986.

On Friday, September 19, 1986, Sharpe filed a motion to continue both the trial and jury selection, due to a conflicting state court trial which he had commenced during the week of September 15, 1986, and which was expected to last from four to six weeks.

The court held a hearing on the property owners' motion for continuance on Monday, September 22, 1987, immediately prior to jury selection. Sharpe did not participate in this hearing or in the voir dire which followed due to his involvement with the state court trial. Two lawyers from Sharpe's firm represented the property owners, and they urged the district court to abide by the "Birmingham Council on Federal–State Judiciary Statement on Docket Conflicts," (the "Accord"), which several local state and federal trial judges and representatives of the Birmingham Bar Association composed. The Birmingham Bar Association has filed an amicus curiae brief urging this Court to support and apply the principles of the Accord.

The Accord contains a list of principles which attorneys and judges are to follow in order to manage and avoid docket conflicts between state and federal courts. The Accord states that when jury trials in state and federal courts are set for approximately the same time, the federal case normally will be given priority. But the first principle outlined in the Accord is that, in general, each court will defer to the other to complete a trial already in progress. The smooth operation of these principles is dependent upon another principle in the Accord: A lawyer with a potential or actual conflict is to keep both the state and federal courts advised of potential conflicts.

The Birmingham Accord represents a common-sensical codification of reasonable procedures for preventing friction between state and federal courts. As a matter of courtesy to Alabama's courts and to the Bar, this Court gives great weight to the Accord's principles in considering the present dispute. On Monday, September 22, 1986, the district court rejected the defendants' motion for continuance and jury selection took place that day as scheduled, with trial set to commence the following Saturday, September 27, 1987. In rejecting defendants' motion for continuance, the district court prominently considered Sharpe's own failure to abide by the Accord by not informing the court of the potential conflict with the state court trial as soon as he was aware it existed. At the hearing on defendants' motion for continuance, defendants' counsel informed the court that Sharpe had been aware of the

potential conflict for about a month, though Sharpe had expected the state case to settle.

■ Sharpe's failure promptly to advise the district court of the potential trial conflict in state court precludes a finding that the court below abused its discretion by failing to grant a continuance. Nonetheless, it can be stated that ordinarily, setting trial for a Saturday while defense counsel is embroiled in a complicated state court trial certainly strains the spirit of the Accord.

### Preclusion of Expert Economist's Trial Testimony

Defendants' second point of error involves objections to the district court's decision to preclude their expert economist, Sheldon Schaffer, from testifying about the fair market value of the courthouse property. It is well-settled that in an eminent domain proceeding, a landowner may prove the market value of his property either by submitting direct evidence of comparable sales, or by presenting the testimony of an expert witness qualified to appraise the property's market value. *U.S. v. 429.59 Acres of Land,*, 612 F.2d 459, 462 (9th Cir.1980); *U.S. v. 320.0 Acres of Land, More or Less, Etc.,* 605 F.2d 762, 798 n. 64 (5th Cir.1979).[1]

Schaffer holds a masters degree in economics from Yale University, and has been a professional economist for over 40 years, 27 of them in Birmingham. He has conducted a number of economic studies of industries and of local economies, particularly in Jefferson County. In addition, Schaffer has conducted studies relating to real estate development, construction, housing and land use, including six projects in the last six years concerning land use or prices.

As preparation for his testimony in the trial below, Schaffer spent over 200 hours researching 145 land sales during the years 1976–84 in the downtown Birmingham area and reviewing economic data on the down-town area. Schaffer obtained the raw data for the 145 sales from a computer printout from the Board of Appraisers, but he did not have personal familiarity with specific parcels. Based upon his research, Schaffer concluded that the fair market value of the courthouse property was $50.00 per square foot. The government raises essentially two grounds for objecting to Schaffer's testimony.

The government first argues that Schaffer is a land use expert, and that a stipulation entered into shortly before trial by the government that the courthouse property's highest and best use was a commercial office building completely took land use out of contention. But the testimony excluded by the court did not concern land use; rather, the court excluded Schaffer's proposed testimony that the courthouse property was worth $50.00 per square foot. While the defendants certainly would have sought to have Schaffer testify as to the property's highest and best use if the parties had not entered into their pretrial stipulation, his study of downtown property sales was designed to support his opinion of the property's *value* for its highest and best use. Consequently, the fact that land use was no longer contested has no bearing on whether Schaffer should have been allowed to testify as to the property's value.

The government next suggests that Schaffer's unfamiliarity with the nature of the transactions underlying his study precludes his testimony. Schaffer's failure to study the particulars of each of these sales, plaintiff argues, opens the door to allow indirect evidence of types of sales traditionally disfavored as evidence of fair market value because they are not comparable: condemnation sales, and sales not at arm's length. Plaintiff suggests that the potential existence of these undesirable types of sales in Schaffer's study of 145 downtown sales, and Schaffer's inability to identify which, if any, of these sales are unfairly biased, justifies the district court's exclusion of his testimony.

---

**1.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

■ Comparable sales are "sales from a willing seller to a willing buyer of similar property in the vicinity at or about the same time as the taking." *320.0 Acres*, 605 F.2d at 798. Consequently, it is not surprising that sales made under the threat of condemnation, where the seller is not necessarily or probably willing, are highly suspect as direct evidence of comparable value. *United States v. 3,727.91 Acres of Land, Etc.*, 563 F.2d 357, 362 (8th Cir. 1977). In a jury trial, if a court admits a forced sale as direct evidence of comparable value, then the jury should be instructed as to the weakness of its probative force. *United States v. 74.60 Acres of Land, Miami Co. v. State of Ind.*, 358 F.2d 143, 144 (7th Cir.1966). Similarly, where a sale is not made at arm's length, it provides scant evidence of comparable value.[2]

The fundamental goal of the trial proceeding, of course, is to supply to the jury evidence of the courthouse property's fair market value. In ruling against Schaffer's testimony, the district court held that although his testimony was relevant, "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury" under Fed.R.Evid. 403. As the district court framed its exclusion of Schaffer's testimony in terms of Rule 403, this Court begins by examining the probative value of Schaffer's testimony.

Initially, it is clear that Schaffer's testimony was designed to address the ultimate issue in this litigation: the fair market value of the courthouse property. This is not a case where excluded evidence was merely probative of a peripheral issue. Instead, Schaffer's proposed testimony focused on the primary issue at trial.

■ Though the topic of Schaffer's proposed testimony is highly relevant to this litigation, his failure to acquaint himself with the substance of each of the 145 transactions in his study conceivably lessens the probative value of his testimony. Analysis of this issue properly focuses upon the level of comparability the law requires of sales which form the basis of an expert's appraisal. "[C]omparable sales may be admitted either as substantive and direct proof of the value of the condemned property or to support the opinion of an expert testifying as to the value of the property taken." *320.0 Acres*, 605 at 798 n. 64. Furthermore, when sales of comparable property are used as the basis for expert testimony, "the requirement of showing similarity between the subject property and the other sales is not as rigorous as it is when the sales of other property are offered as substantive proof of value." *429.59 Acres*, 612 F.2d at 462.

■ Certainly where an expert's testimony amounts to no more than a mere guess or speculation, a court should exclude his testimony. *American Nat. Bank and Trust Co. of Chicago v. K–Mart Corp.*, 717 F.2d 394, 399 (7th Cir.1983). But where the expert's testimony has a reasonable factual basis, a court should not exclude it. Rather, it is for opposing counsel to inquire into the expert's factual basis. *Id.*

■ An expert witness's testimony as to the value of condemned property is admissible provided that he states the assumptions on which his opinions are based, even though his assumptions do not include evidence of comparable sales. *United States v. 329.73 Acres of Land, Etc.*, 666 F.2d 281, 283 (5th Cir.1982), *on reh'g*, 704 F.2d 800 (5th Cir.1983); *3,727.91 Acres*, 563 F.2d at 362. Importantly, the jury is instructed that it is completely free to accept or reject an expert's testimony, and to evaluate the

---

2. Plaintiff cites the case of *United States v. Leavell & Ponder, Inc.*, 286 F.2d 398, 403–04 (5th Cir.1961), as supporting the proposition that sales not at arm's length are improperly considered as evidence of comparable value. The *Leavell* case does not stand for this proposition. Instead, *Leavell* holds that it is error to allow the introduction of evidence of prior sales of the condemned property which are not for cash or its equivalent, unless there is substantial evidence as to the fair market value of the noncash assets transferred in exchange for the condemned property. Nonetheless, sales which are not at arm's length are unreliable indicators of market value.

weight given such testimony in light of the reasons the expert supplies for his opinion.[3]

In the present dispute, the Court need not hold that an expert witness in a condemnation case can testify although he has no knowledge of comparable sales. But certainly where an expert's testimony has a rational foundation as to market value, his testimony should be permitted. *U.S. v. 77,819.10 Acres of Land, More or Less, Etc.*, 647 F.2d 104, 108, *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed. 441 (1982). Schaffer's study of other downtown real estate sales, his considerable training as an economist, his familiarity with the local real estate market and his previous studies support his ability to testify as an expert concerning the value of the courthouse property. An economist is qualified to testify about the market value of property although his valuation methodology is somewhat unique and he relies upon statistics provided by a government agency. *Clinchfield R. Co. v. Lynch*, 784 F.2d 545, 553–54 (4th Cir.1986).

Given the Court's conclusion that the subject of Schaffer's proposed testimony is highly relevant, and that his study of downtown real estate renders his opinion sufficiently probative of the property's value, the Court must consider whether Fed. R.Evid. 403 properly provides a basis for excluding Schaffer's testimony. Determinations of admissibility of evidence under Rule 403 are subject to review under the abuse of discretion standard. *Dallis v. Aetna Life Ins. Co.*, 768 F.2d 1303, 1305 (11th Cir.1985). The district court listed three "dangers" under Rule 403: (1) unfair prejudice; (2) confusion of the issues; and (3) misleading the jury. But the ability of these Rule 403 dangers to outweigh substantially the probative force of the evidence is quite slim where the evidence it-

self is undeniably probative of a central issue in the case. *United States v. Roark*, 753 F.2d 991, 994 (11th Cir.), *reh'g denied*, 761 F.2d 698 (11th Cir.1985).

In *Roark*, the court stated that "[t]he major function of Rule 403 is 'limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.'" *Id.* The *Roark* court held that it was harmful error to exclude an expert witness's testimony because the issue of whether the expert's "testimony will be persuasive is for the jury." *Id.*

Exclusion under Rule 403, of course, presupposes that the proffered evidence was relevant. But given the district court's finding that Schaffer's testimony would have been relevant, and this Court's conclusion that it was directly probative of the central issue at bar, Rule 403 is a highly unlikely mechanism to exclude his testimony. Unfair testimony under the Rule, of course, is "not to be equated with testimony simply adverse to the opposing party." *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir.1977), *cert. denied*, 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978). Evidence is prejudicial under Rule 403 where it appeals to an illegitimate basis for persuasion, and thereby goes beyond proving the fact or issue it is offered to prove. *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir.1980). But there is no suggestion on the record that Schaffer's testimony had the potential to go illegitimately beyond proving the fair market value of the property.

The second danger the district court identified is the substantial likelihood that Schaffer's testimony would confuse the issues. The district court did not ex-

---

**3.** *See* Pattern Jury Instructions, Eleventh Circuit, Basic Instruction 7 ("Merely because an expert witness has expressed an opinion, however, does not mean that you must accept that opinion."). *See also*, Manual of Model Jury Instructions for the Ninth Circuit, sec. 12.07 ("You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case."); 3 Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions, sec. 72.08 ("If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or if you feel that it is outweighed by other evidence, you may disregard the opinion entirely.").

plain exactly how Schaffer's testimony would confuse the issues in this case. In fact, there was only one issue at trial, and his testimony was intended to address that issue: the fair market value of the courthouse property. While Schaffer's testimony itself hardly would have confused the issues in this case, it is possible that the government's rebuttal of his testimony would be quite detailed. The risk of confusing rebuttal testimony is properly considered in a Rule 403 analysis. *Ford v. Sharp*, 758 F.2d 1018, 1023 (5th Cir.1985); *United States v. Renfro*, 620 F.2d 497, 501 (5th Cir.1980), *cert. denied*, 449 U.S. 921, 101 S.Ct. 321, 66 L.Ed.2d 149 (1980); *United States v. Squella–Avendano*, 478 F.2d 433, 438–39 (5th Cir.1973).

If Schaffer were to testify, the plaintiff would be free to inquire on cross-examination about the weaknesses of his study. In particular, the plaintiff would be able to raise questions about the expert's unfamiliarity with the sales in his study, and the risk that condemnation sales and sales not at arm's length unfairly biased his study. But this potential inquiry merely focuses upon the factors that determine whether another sale of property was comparable. From this perspective, and lacking any basis in the record for concluding that further confusion was likely, there was little risk, if any, that Schaffer's testimony would confuse the issues in this case.

Finally, this Court must consider whether Schaffer's testimony had a substantial probability of misleading the jury. It is not uncommon for courts to combine this inquiry with the issue of confusion of the issues. *See, e.g., United States v. Bernhardt*, 642 F.2d 251, 253 (8th Cir.1981). Certainly evidence which confuses the issues is likely to mislead the jury, but a jury may be misled in many ways, not merely by evidence which confuses the issues. "But while every confusion of the issues presents a danger of misleading the jury, the reverse is not true." 22 Wright & Graham, Federal Practice and Procedure: Evidence section 5217, p. 293 (1978).

■■■■ Where the adversary system provides a party a full opportunity to re-fute an expert's testimony during cross-examination, exclusion due to the danger of misleading the jury is generally inappropriate. *Dallis*, 768 F.2d at 1305. Where an expert's testimony could mislead the jury by addressing factors which as a matter of law are not relevant to the issues in the dispute, then exclusion under Rule 403 is appropriate. *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir.1985), *cert. denied*, 475 U.S. 1124, 106 S.Ct. 1646, 90 L.Ed.2d 190 (1986). But this Court has already concluded that a lessened standard of comparability is appropriate where other sales form the basis of an expert's opinion. Schaffer's testimony would not, as a matter of law, mislead the jury by raising topics legally irrelevant.

■■■■ In summary, the district court's conclusion that Schaffer's testimony posed a risk of unfair prejudice, confusion of the issues, and misleading the jury was an abuse of discretion. Schaffer should have been permitted to testify as to his opinion of the fair market value of the courthouse property, and the lower court's failure to allow him to do so was an abuse of discretion. This abuse of discretion substantially prejudiced the defendants and prevented them from receiving a fair trial. Therefore, while both of the plaintiff's objections to Schaffer's testimony as to foundation are properly raised on cross-examination, his testimony on the fair market value of the courthouse property is appropriate.

### Exclusion of Evidence of Two Nearby Sales

The defendants also object to the district court's decision to exclude evidence of two other sales in downtown Birmingham. One sale was the so-called Southtrust property, located two-and-one-half blocks from the courthouse site. The district court excluded evidence of the sale price of the Southtrust site because it held as a matter of law that that property was not comparable to the courthouse site.

The defendants presented the testimony of Robert Schleusner, a real estate developer who purchased the Southtrust property and built a major office building complex

on the property. The district court accepted Schleusner as an expert in the field of the value of real estate in downtown Birmingham. But the lower court prevented Schleusner from testifying that he paid an average price of $173.14 per square foot for the Southtrust property.

The district court permitted Schleusner to testify about his considerable experience developing real estate, and that in his opinion the fair market value of the courthouse property was $60.00 per square foot. Schleusner testified outside of the jury's presence that the Southtrust site was the most sought-after location in downtown Birmingham. There was no suggestion that the courthouse property was of similar stature.

The defendants also offered the testimony of Everette Shepherd, whom the district court also qualified as an expert in the field of real estate, particularly in the area of downtown Birmingham. Shepherd testified that he was very familiar with the courthouse property and with the properties proximate thereto. He testified that his aunt had an interest in a lot across the street from the courthouse site, called the Hill property. But the district court sustained an objection to Shepherd's testimony that the Hill property sold for $57.14 per square foot. The court precluded testimony as to the sale price of the Hill property because it was not sold until June 30, 1984. The court held that no evidence would be permitted of sales subsequent to the courthouse property's taking on March 9, 1984.

This Court has already addressed the proper standard for admitting evidence of comparable sales in the context of an expert's testimony. The *429.59 Acres* decision supports a lessened standard of comparability where another sale is used as the basis of an expert's opinion. 612 F.2d at 462. The district court qualified both Schleusner and Shepherd as expert's in the field of real estate valuation in downtown Birmingham. Certainly Schleusner's testimony that the courthouse site was worth $60.00 per square foot would have been bolstered had he been permitted to state that he had purchased land just a couple of blocks away for nearly three times that price. The parties in the present dispute stipulated that the courthouse property's highest and best use was a commercial office building, and the Southtrust project was such a building, albeit at the most prime location.

"[C]omparability is largely a function of three variables: characteristics of the properties, their geographic proximity to one another, and the time differential." *320.0 Acres*, 605 F.2d at 798. Given the spectrum of possible comparable sales, "[s]ound and just trial practice is to admit as many of the 'most comparable' sales available as is necessary to fairly permit each side to present its argument of fair market value for the jury's consideration." *Id.*

 Schleusner should have been permitted to testify how much he paid for the Southtrust property. The district court qualified him as an expert in the area of valuing downtown Birmingham real estate, and his testimony as to the sale price of the Southtrust property formed the basis of his opinion of the value of the courthouse property. It is perfectly appropriate for an expert to consider other sales in forming his opinion of the condemned property's value. *320.0 Acres*, 605 F.2d at 798 n. 64. These other sales need not evidence the highest level of comparability required of sales offered as direct evidence, because they are offered through an expert in order to support his opinion of the property's value. *429.59 Acres*, 612 F.2d at 462.

 In rejecting Shepherd's testimony on the sale price of the Hill property, the court concluded that "[t]here's no question but that once that courthouse was going to be built on the property ... that the value of the adjacent property would be substantially enhanced." But in reviewing the record, this Court concludes that there was no evidence adduced concerning the propensity of the courthouse to enhance substantially the value of nearby parcels. Consequently, the district court's ruling is best understood as a finding as a matter of law that post-taking sales are not credible evidence of comparable sales.

In this circuit, the definitive case on post-taking sales as evidence of fair market value is the *320.0 Acres* decision. *U.S. v. 320.0 Acres of Land, Etc.*, 605 F.2d 762 (5th Cir.1979). The *320 Acres* case addressed the proper standards for admitting evidence of comparable sales in order to demonstrate the fair market value of condemned land. The comparable evidence offered in *320 Acres* was sales which fell within the scope of the same government project. But the court described an analogous problem where an owner of condemned land offers evidence of sales subsequent to the taking of the property whose fair market value is at issue. The court approvingly cited language from an opinion on post-taking sales: "There is no absolute rule which precludes consideration of subsequent sales. The general rule is that evidence of 'similar sales in the vicinity made at or about the same time' is to be the basis for the valuation and evidence of all such sales should generally be admissible ... including subsequent sales." *Id.* at 799 (*quoting United States v. 63.04 Acres of Land*, 245 F.2d 140, 144 (2d Cir.1957)).

In *320 Acres,* the court held that "[t]he reasoning of these subsequent sales cases applies with equal force to [scope of the project] cases." *Id.* at 800. The court went on to summarize its rationale as follows: "To repeat, sound trial practice is to admit a liberal number of the 'most comparable' sales available, leaving it to the fact-finder to assess the ultimate probative worth of any and all sales admitted." *Id.* at 801. Given this preference for allowing the fact-finder to decide what, if any, weight to attach to evidence of post-taking sales, and the flexible standard appropriate in admitting evidence as the basis of an expert's opinion, this Court concludes that the district court abused its discretion by preventing Shepherd from testifying as to the sale price of the Hill property. While post-taking sales are not automatically appropriate evidence of comparable value, neither are they automatically inappropriate. This abuse of discretion caused defendants substantial prejudice and requires that they be afforded a new trial.

For the reasons provided in this opinion, the orders of the district court excluding Schaffer's testimony as to the value of the courthouse property, and precluding testimony about the sale prices of the Southtrust and Hill properties, are hereby REVERSED. This matter is REMANDED to the district court so that the defendants may receive a new trial.