NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0157n.06

Nos. 19-5494/5542

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Mar 25, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| BABCOCK POWER, INC.; VOGT POWER INTERNATIONAL, INC., | ) ) ) | |
| Plaintiffs-Appellants/Cross-Appellees, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR |
| v. | ) ) | THE WESTERN DISTRICT OF KENTUCKY |
| STEPHEN T. KAPSALIS, | ) ) | |
| Defendant-Appellee/Cross-Appellant. | ) | |

O R D E R

Before: MOORE, GILMAN, and ROGERS, Circuit Judges.

In No. 19-5494, Plaintiffs Babcock Power, Inc. (BPI) and Vogt Power International, Inc. (Vogt) appeal the district court's judgment reducing the jury's verdict on their breach-of-contract claim against Defendant Stephen T. Kapsalis from $202,865 to $1. In No. 19-5542, Kapsalis appeals the district court's order denying his motion to exclude the report and testimony of plaintiffs' damages expert, James A. Gravitt. The parties have waived oral argument, and the panel unanimously agrees that oral argument is not needed. *See* Fed. R. App. P. 34(a).

BPI and Vogt design and manufacture a variety of power-generation and related products. Vogt is a wholly owned subsidiary of BPI. In 2009, BPI hired Kapsalis as a senior vice president and its chief operating officer. Kapsalis later became president and chief executive officer of Vogt. As a condition of his employment with BPI, Kapsalis signed a noncompete and nondisclosure agreement in which he promised not to divulge to third parties any of BPI's confidential information. Under the agreement, "confidential information" included BPI's technical designs

and specifications, trade secrets, manufacturing techniques, financial data, and marketing strategies. Kapsalis also agreed that during his employment, and for a period of one year after the termination of his employment, he would not divert away from BPI any business opportunities that it was pursuing. The agreement stated that it was to be governed and construed by the law of the Commonwealth of Massachusetts, but the parties agreed that Kentucky law was controlling.

In March 2013, Kapsalis resigned from BPI and Vogt in order to take a position as president and chief executive officer of Express Group Holdings, LLC (Express), a competitor of BPI's. According to Kapsalis, BPI's CEO requested that Kapsalis "stay [on] for three weeks to ensure an orderly transition." Before leaving BPI, Kapsalis downloaded into external storage devices numerous files containing BPI's and Vogt's confidential and proprietary information, including customer and client contact lists, schematics and mechanical drawings, and strategic planning documents.

In July 2013, BPI and Vogt (hereinafter "BPI") filed suit against Kapsalis in the district court, raising federal claims under the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030, and the Lanham Act, 15 U.S.C. § 1125. BPI also asserted state-law claims against Kapsalis for breach of contract, misappropriation of trade secrets, breach of fiduciary duty, and conversion of intellectual property. In November 2014, BPI amended its complaint and added Express as a defendant, asserting claims for misappropriation of trade secrets, conversion, and unjust enrichment. BPI sought money damages and injunctive relief against both defendants. The district court subsequently stayed the case against Express after Express filed a Chapter 7 bankruptcy petition.

BPI's claims against Kapsalis proceeded through discovery to summary judgment. The district court granted summary judgment to Kapsalis on BPI's CFAA, Lanham Act, and breach-of-fiduciary-duty claims. The court also granted summary judgment to Kapsalis to the extent that BPI claimed that Kapsalis breached his noncompete agreement by diverting business away from BPI. The district court denied Kapsalis's motion for summary judgment as to BPI's claim that he breached the nondisclosure agreement and misappropriated its trade secrets.

Those two claims proceeded to a jury trial. BPI sorted the confidential and proprietary information that Kapsalis allegedly misappropriated into five categories: computer aided design (CAD) standards, calculation sheets (which insure that BPI's designs meet industry safety standards), customer lists, schematics and mechanical drawings, and strategic plans. BPI retained Gravitt, a certified public accountant, to provide a report and opinion on the damages that BPI allegedly suffered because of Kapsalis's alleged misconduct. Gravitt initially concluded that BPI was entitled to compensatory damages of $268,834 for its CAD standards,[1] $43,411 for its calculation sheets, $6,214,483 for its customer lists, $2,135,525 for its schematics and mechanical drawings, and $452,074 for its strategic planning documents, for a total loss of $9,114,327.

Arguing that Gravitt's report and proposed testimony on BPI's damages were speculative, unreliable, and based impermissibly on BPI's hearsay statements, Kapsalis moved to exclude Gravitt from testifying at trial pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The district court denied Kapsalis's motion in a summary order, finding that Gravitt "is qualified to be an expert, his testimony will assist the jury, and his principles and methods are reliable. Further, his opinions are not impermissibly speculative. The objections of Kapsalis go to the weight, rather than the admissibility of his expert opinion." At trial, Gravitt testified substantially in conformity with his report.

The parties also disputed whether, in the absence of proof of actual damages, Kentucky law permitted BPI to recover damages on its breach-of-contract claim under a "reasonable royalty" theory, that is, "the price, if any, that would be agreed upon by a willing buyer and a willing seller for the use made of a trade secret." The district court preliminarily concluded that Kentucky law permitted BPI to recover only nominal damages for breach of contract if it did not suffer any actual damages—in other words, in the absence of actual damages, BPI could not rely on the reasonable-royalty methodology. The court suggested further that Kapsalis was entitled to judgment as a matter of law on BPI's breach-of-contract claim because BPI failed to prove that it suffered any

---

[1] Gravitt testified during trial that the figure for the CAD standards actually should have been reduced by 50% and were in fact around $ 134,000.

actual damages resulting from Kapsalis's alleged breach of the nondisclosure agreement. Nevertheless, the court decided to instruct the jury that it could award BPI a reasonable royalty for Kapsalis's alleged breach of the nondisclosure agreement, and that it had to award nominal damages if BPI failed to prove actual damages. The court indicated that it would reserve a final decision on the reasonable-royalty issue for post-judgment motion practice.

The jury returned special verdicts finding that Kapsalis misappropriated BPI's schematics, mechanical drawings, and strategic plans, and that Kapsalis breached the nondisclosure agreement with respect to BPI's CAD standards, calculation sheets, customer/contact lists, schematics and mechanical drawings, and strategic plans. The jury award BPI $174,072 in damages on its misappropriation-of-trade-secrets claim and $202,865 in damages on its breach-of-contract claim. The district court entered judgment on the jury's verdicts.

Kapsalis then filed a motion to alter or amend the district court's judgment under Rule 59(e) of the Federal Rules of Civil Procedure. In his motion, Kapsalis renewed his argument that BPI could not utilize the reasonable-royalty method to recover damages for breach of the nondisclosure agreement in the absence of actual damages. Arguing that BPI failed to prove that it suffered actual damages resulting from his breach of the agreement, Kapsalis moved the district court to reduce the jury's award of $202,865 on that claim to nominal damages. Accepting Rule 59(e) as the proper mechanism for modifying damages, the district court reviewed BPI's evidence at trial and found that BPI had failed to prove that it suffered any actual damages from Kapsalis's breach of the nondisclosure agreement or that he had used or disclosed BPI's confidential information. The court concluded therefore that, under Kentucky law, BPI was entitled to an award of only nominal damages for Kapsalis's breach of the nondisclosure agreement. The court therefore reduced BPI's award on its breach-of-contract claim to $1, entered a new judgment, and certified that the judgment was final and appealable and that there was no just cause for delay. *See* Fed. R. Civ. P. 54(b). The court left intact the award for the trade-secrets claim.

BPI filed a timely appeal from that judgment.[2]  Kapsalis cross-appeals the district court's order denying his motion to exclude Gravitt from testifying.[3]

A. BPI's Appeal

BPI appeals the district court's judgment reducing the jury's award on its breach-of-contract claim to $1.  We review a district court's order granting a remittitur of damages based on Rule 59(e) under the abuse-of-discretion standard.  *See Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 467 (6th Cir. 2009); *Roush v. KFC Nat'l Mmgt. Co.*, 10 F.3d 392, 397 (6th Cir. 1993).  An abuse of discretion occurs when the reviewing court is firmly convinced that the district court made a clear error of judgment.  *See Szeinbach v. Ohio State Univ.*, 820 F.3d 814, 820 (6th Cir. 2016).  A remittitur should be granted only "if the award *clearly* exceeds 'the amount which, under the evidence in the case, was the maximum that the jury reasonably could find to be compensatory' for the plaintiff's loss."  *In re Lewis*, 845 F.2d 624, 635 (6th Cir. 1988) (some internal quotation marks omitted) (quoting *Manning v. Altec, Inc.*, 488 F.2d 127, 133 (6th Cir. 1973)).  "A trial court is within its discretion in remitting a verdict only when, after reviewing all evidence in the light most favorable to the awardee, it is convinced that the verdict is clearly excessive, resulted from passion, bias or prejudice; or is so excessive or inadequate as to shock the judicial conscience of the court."  *Gregory v. Shelby County*, 220 F.3d 433, 443 (6th Cir. 2000).

---

[2] BPI appealed the judgment while the claims against Express were stayed.  Because the district court's judgment did not dispose of all the claims against all the parties and was not a sufficient certification under Rule 54(b) of the Federal Rules of Civil Procedure, we dismissed the appeal for lack of appellate jurisdiction in March 2020.  In September, we reinstated the appeal once BPI obtained a properly certified judgment.

[3] In his notice of appeal, Kapsalis also assigned error to the district court's orders denying his motions for judgment as a matter of law at the close of plaintiffs' case at trial and at the close of all the evidence.  Kapsalis does not substantively address these two assignments of error in his initial brief, however, and therefore he has forfeited appellate review of the district court's denial of those motions.  *See Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 462 (6th Cir. 2003).  Although Kapsalis briefly suggests that the damages award for the misappropriation-of-trade-secrets claim was in error, he does not develop this argument and only cursorily alludes to it as part of his argument that defendants' expert testimony should have been excluded.

A district court must, however, give the awardee the option of accepting a new trial on damages in lieu of accepting the remittitur.[4]  *See Wallace v. FedEx Corp.*, 764 F.3d 571, 591-92 (6th Cir. 2014).  This requirement is waived when a legal rule compels a reduction of the jury's award.  *See id.* at 591; *Lulaj v. Wackenhut Corp.*, 512 F.3d 760, 766 (6th Cir. 2008).  We review de novo a district court's conclusion that the defendant is entitled to a reduction in damages as a matter of law.  *See Lulaj*, 512 F.3d at 764.

When a claim arises under state law, "we apply the law of the state's highest court."  *See Peterson v. Johnson*, 714 F.3d 905, 913 (6th Cir. 2013) (quoting *Herrera v. Churchill McGee, LLC*, 680 F.3d 539, 544 (6th Cir. 2012)).  If the state's highest court has not addressed the issue at hand, we '"must ascertain the state law from all relevant data,' including the state's intermediate appellate courts, the opinions of which we give weighty, but not controlling, deference."  *Id.* (quoting *Herrera*, 680 F.3d at 544).  Despite the choice-of-law clause in the nondisclosure agreement, the parties agreed that Kentucky law applied to BPI's breach-of-contract claim, and we will assume the same.

In a breach-of-contract action, a plaintiff may recover only those damages which arise naturally from the breach itself or those which "may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract."  *Staves Mfg. Corp. v. Robertson*, 128 S.W.2d 745, 751 (Ky. 1939).  Except in cases where the parties have agreed to reasonable liquidated damages in the event of a breach of the agreement, *see Mattingly Bridge Co. v. Holloway & Son Constr. Co.*, 694 S.W.2d 702, 704-05 (Ky. 1985), a party is entitled to compensatory damages, i.e., those damages which "put the injured party in the same condition, so far as money can do so, in which he would have been if the contract had been duly performed."  *Graves v. Winer*, 351 S.W.2d 193, 195 (Ky. 1961); *see also Univ. of Louisville v. RAM Eng'g & Constr., Inc.*, 199 S.W.3d 746, 748 (Ky. Ct. App. 2005); *McGuire v. Lorian*, 5 Ky. Op. 145, 145 (Ky. 1872) (holding that a party may recover only actual damages for breach of contract).  "Actual damages" are "[a]n

---

[4] BPI challenges only the district court's order granting a remittitur but does not appear to argue that it was entitled to the option of accepting a new trial on damages.

amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses." *Craig & Bishop, Inc. v. Piles*, 247 S.W.3d 897, 907 (Ky. 2008) (quoting BLACK'S LAW DICTIONARY (8th ed. 2004) (alteration in original)). "Damages are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty." *Pauline's Chicken Villa, Inc. v. KFC Corp.*, 701 S.W.2d 399, 401 (Ky. 1985) (quoting Restatement (Second) Contracts § 352 (1981)). In the absence of actual damages, a party may recover nominal damages for breach of a contract. *See Harness v. Ky. Fluor Spar Co.*, 147 S.W. 934, 940 (Ky. 1912).

In this case, BPI had no evidence of actual damages, such as a lost client or sale, or that Kapsalis profited in any way because he breached the nondisclosure agreement. Indeed, Gravitt, BPI's expert, conceded that there were no such damages. As highlighted by the district court, the best that BPI could muster were vague assertions that its proprietary information was diminished in value because it was no longer secret.

Gravitt did testify about the cost to BPI to develop some of this information, but he did not offer an opinion as to the loss in value, if any, that these assets suffered due to Kapsalis's breach of the nondisclosure agreement. Although BPI is correct that it did not need to prove its damages with precision so long as it "is reasonably certain that damage has resulted," *Curry v. Bennett*, 301 S.W.3d 502, 506 (Ky. Ct. App. 2009), there was no evidentiary basis from which the jury could have reasonably estimated BPI's damages for loss of secrecy. In Kentucky, juries are "not permitted to indulge in speculation and guesswork as to the probable damages resulting from an alleged act of negligence where there is no tangible evidence in that respect." *Louisville & N.R. Co. v. Lankford,* 200 S.W.2d 297, 298 (Ky. 1947). The jury must be presented with facts that "afford a basis for measuring or computing damages with reasonable certainty." *Kentucky W. Va. Gas Co. v. Frazier*, 195 S.W.2d 271, 273 (Ky. 1946); *see also Prather Drilling & Producing Co. v. Walker*, No. 2009-CA-001082-MR, 2011 WL 1196414, at *2 (Ky. Ct. App. Apr. 1, 2011).

Moreover, even if the reasonable-royalty methodology provided the jury with the basis for calculating damages, as BPI appears to argue, recovery under this methodology has not been

recognized by Kentucky law for breach-of-contract claims. Citing *Innovation Ventures, LLC v. Custom Nutrition Laboratories, LLC*, 912 F.3d 316 (6th Cir. 2018), BPI argues that the jury's damage award on the breach-of-contract claim is sustainable because that claim was paired with a misappropriation-of-trade-secrets claim, pursuant to which reasonable-royalty damages are recoverable. In *Innovation Ventures*, we considered whether Michigan law permitted a plaintiff to recover damages for a breach-of-contract claim related to trade secrets using a reasonable-royalty methodology. As BPI points out, we discussed cases from other jurisdictions in which plaintiffs were permitted to recover reasonable-royalty damages where the breach-of-contract claim was tied to a misappropriation-of-trade-secrets claim. We concluded, however, that "no controlling authority from either this court or any Michigan court holds that damages in the form of a reasonable royalty may be assessed in a breach of contract case." *Id.* at 347.

Like the appellant in *Innovation Ventures*, BPI did not cite any authority from the relevant state law to support its argument that pairing up a breach-of-contract claim with a misappropriation-of-trade-secrets claim permitted it to recover a separate award of damages on its breach-of-contract in the form of a reasonable royalty. The other cases on which BPI relies, several of which are out-of-circuit district court opinions, are also of no help to BPI because many of those cases involved defendants who had used the confidential information.

In the absence of controlling authority on this specific issue, we apply the basic rule of Kentucky law that a plaintiff may recover actual damages or nominal damages for breach of contract. Here, the record is clear that BPI experienced no reasonably certain actual damages from Kapsalis's breach of the nondisclosure agreement. Consequently, the district court did not err in ruling that BPI could recover only nominal damages on its breach-of-contract claim.

B. Kapsalis's Cross-Appeal

Kapsalis appeals the district court's order denying his motion to exclude Gravitt's report and opinion testimony as to BPI's damages. Kapsalis argues that Gravitt's opinions were unreliable and based impermissibly on hearsay statements from BPI's employees.

When a witness "is qualified as an expert by knowledge, skill, experience, training, or education," he may give opinion testimony if his "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; his "testimony is based on sufficient facts or data" and "is the product of reliable principles and methods"; and he "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The trial court is the "gatekeeper" of expert testimony, and thus it must exclude any opinion evidence that is unreliable and irrelevant, but it also has "considerable leeway" in determining reliability. *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002) (citation omitted).

The trial court may consider several factors in deciding whether to admit expert testimony, including "testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community." *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 593-94). Although these factors are not relevant in every case, the trial court must assess whether they "are reasonable measures of reliability in a given case." *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 407 (6th Cir. 2006). The district court must make specific findings as to the reliability of the expert's opinion. *Id.* But the district court's failure to fulfill its gate-keeping function is not a reversible error if appellate review shows that the court did not abuse its discretion in admitting the expert's testimony. *Id.* Finally, as long as there is a reasonable factual basis for the expert's opinion, any objections to his testimony go to its weight and not its admissibility. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529-31 (6th Cir. 2008). Here, although the district court might not have sufficiently explained why it concluded that Gravitt's opinions were reliable, the record shows that the court did not abuse its discretion in allowing him to testify.

First, the jury found that Kapsalis did not misappropriate BPI's CAD standards, calculation sheets, and customer lists. Given our conclusion above that BPI was entitled to only nominal damages on its breach-of-contract claim, any error in the district court's decision to allow Gravitt to offer an opinion on damages with respect to these trade secrets was harmless.

Second, Kapsalis's argument that the district court should have excluded Gravitt's testimony because his opinion was based on hearsay is without merit. The Federal Rules of Evidence specifically permit an expert to base his opinion on hearsay "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703; *see also Daubert*, 509 U.S. at 592 ("Unlike an ordinary witness . . . , an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." (internal citation omitted)). Kapsalis has not shown that experts such as Gravitt do not reasonably rely on information provided to them by their clients in determining damages—indeed, his own expert testified that accountants need to rely on information provided to them by their clients to assess damages.

Third, Kapsalis complains that Gravitt's opinion was unreliable because Gravitt assumed that Kapsalis was liable for misappropriation. But this argument is again foiled by Kapsalis's own expert, who explained that, in calculating damages, experts assume both that the asset was a trade secret and that the defendant is liable for misappropriation.

Fourth, we consider the admissibility of Gravitt's report and opinion as to the damages that BPI suffered as a result of Kapsalis's misappropriation of its schematics, mechanical drawings, and strategic plans.

For some of the individual schematics and mechanical drawings, Gravitt employed the relief-from-royalty method, which is an estimate of the royalty expense that a company would be required to pay if it had to license the intangible asset. Gravitt based his estimate of damages pursuant to this method on prior licenses that BPI had granted for its intellectual property and on publicly available information on royalties for intellectual property.

For the strategic plans and some of the schematics and mechanical drawings, Gravitt used the cost approach to valuation, which essentially equals the time and labor expended to create the intangible asset. Gravitt arrived at his damages estimate for these assets by examining company records to determine which employees worked on which project, how much time they spent on the

project, what their salaries were, and what the other expenses associated with developing the asset were.

Gravitt used recognized methods for determining damages when an intangible asset is misappropriated—in other words, he did not develop them specifically for this case.[5] *Cf. Mike's Train House*, 472 F.3d at 408 ("We have been suspicious of methodologies created for the purpose of litigation, because 'expert witnesses are not always unbiased scientists.'" (quoting *Turpin v. Merrell Dow Pharms., Inc.*, 959 F.2d 1349, 1352 (6th Cir. 1992))). Gravitt had a reasonable factual basis to support his opinions. Kapsalis cross-examined Gravitt at trial about deficiencies in his opinions, and his expert offered her opinion as to some of the problems that she saw with Gravitt's opinions. The district court properly instructed the jury on how to evaluate the credibility of witnesses, and the jury was free to give Gravitt's testimony the weight that it thought was warranted. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993) ("Where an expert's testimony amounts to 'mere guess or speculation,' the court should exclude his testimony, but where the opinion has a reasonable factual basis, it should not be excluded. Rather, it is up to opposing counsel to inquire into the expert's factual basis." (quoting *United States v. 0.161 Acres of Land*, 837 F.2d 1036, 1040 (11th Cir. 1988))). Under these circumstances, the district court did not abuse its discretion in allowing Gravitt to testify.

---

[5] *See* Shawn D. Fox, *Calculation of Damages in Misappropriation of Trade Secrets Matters*, at 21-23, Insights (Spring 2016), http://www.willamette.com/insights_journal/16/spring_2016_2.pdf (last visited Jan. 24, 2020); Antonella Puca, *The Intangible Valuation Renaissance: Five Methods*, Enterprising Investor, (Jan. 11, 2019), https://blogs.cfainstitute.org/investor/2019/01/11/a-renaissance-in-intangible-valuation-five-methods/ (last visited Jan. 24, 2020); Howard M. Fielstein and Vijay Krishnamurthy, *Valuation of Intellectual Property*, Corporate Counsel Business Journal (Feb. 1, 2004), https://ccbjournal.com/articles/valuation-intellectual-property (last visited Jan. 24, 2020).

Accordingly, we find no error in the district court's order denying Kapsalis's motion to exclude Gravitt's report and testimony.

Conclusion

In summary, we **AFFIRM** the district court's judgment.

ENTERED BY ORDER OF THE COURT

_____

Deborah S. Hunt, Clerk