*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0016p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

LISA LULAJ,

      *Plaintiff-Appellee/Cross-Appellant,*

    *v.*

THE WACKENHUT CORPORATION,

      *Defendant-Appellant/Cross-Appellee.*

Nos. 06-2163/2165

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-75051—John Corbett O'Meara, District Judge.

Argued: October 23, 2007

Decided and Filed: January 11, 2008

Before: MARTIN, GIBBONS, and SUTTON, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** William J. Liedel, LIEDEL, GRINNAN & LIEDEL, P.C., Royal Oak, Michigan, for Appellant. Scott E Combs, Novi, Michigan, for Appellee. **ON BRIEF:** William J. Liedel, LIEDEL, GRINNAN & LIEDEL, P.C., Royal Oak, Michigan, for Appellant. Scott E Combs, Novi, Michigan, for Appellee.

_____

**OPINION**

_____

    BOYCE F. MARTIN, JR., Circuit Judge. Wackenhut appeals the district court's denial of its motion for renewed judgment as a matter of law, or in the alternative a new trial, following a jury verdict in favor of Lisa Lulaj on a claim of sex discrimination. Lulaj cross-appeals the district court's decision to reduce the jury's determination of damages. Both parties appeal the amount of attorney's fees awarded. We AFFIRM.

I

    Lulaj began work at Chrysler as a fire security officer in 2000. In early 2004, Chrysler outsourced its fire security operations to Wackenhut, and proceeded to transition its various facilities. Lulaj continued working through the transition as a Wackenhut employee in the same position she had occupied with Chrysler, helping to train new personnel. However, she remained only because of the promise of a promotion to a Supervisor position at a different facility in Auburn Hills. She testified that without the promise of a promotion, she would not have stayed because a

1

lateral transition to Wackenhut meant a significant decrease in her overall benefits package. In particular, she lost health care and tuition reimbursements. The Supervisor position she was promised did carry those benefits.

Lulaj had numerous conversations with managers Larry Payne, Sean Joyce, and Gary Snyder, during which she was assured of a position as a Supervisor in the Auburn Hills facility. Payne had the ultimate power to make promotion decisions at Wackenhut, though he claimed that in general he followed the wishes of his customer (in this case Chrysler). Joyce and Snyder were Wackenhut managers for the Chrysler contract. Lulaj did not apply for other supervisory positions during the transition time in 2004 because it was understood by both her and her superiors that she would be going to Auburn Hills.

On April 26, 2004, Lulaj filled out forms notifying Wackenhut that she was pregnant, and requesting a new uniform that would fit her. She specifically told Corey Tetrev (her immediate supervisor) and Snyder (a higher-level manager) of her pregnancy. Wackenhut officials testified that all promotion decisions for the Auburn Hills facility were made by May 1. On May 7, Tetrev came to speak with Lulaj to offer her a promotion to "Super G" (a promotion from her current position, but significantly inferior to the promised Supervisor position). Lulaj testified that Tetrev "looked at me and he looked at my stomach, and he said you should consider this position considering your position." Lulaj was upset and attempted to contact Payne, but he never returned any of her calls.

Lulaj began maternity leave on June 21, which was to extend until September 20. In September she again tried to contact Payne without success, demanding that she be placed in a Supervisor position. Wackenhut requested that she return to work after September 20, but Lulaj never responded and never returned to work. Lulaj testified that when she wrote the letter demanding her supervisory position, she did not intend to return to Wackenhut because they had lost her trust.

Lulaj filed suit in Wayne County Circuit Court under the Elliot-Larsen Civil Rights Act. MICH. COMP. LAWS ANN. §§ 37.2101-37.2804 (2007). Wackenhut removed the case to district court on December 28, 2004, and the case was tried to a jury on April 4-6, 2006. The jury returned a verdict for Lulaj. It found that Lulaj had been denied promotion because of her pregnancy but that there was no constructive discharge. The jury awarded damages: $75,788 for back pay, $67,340 for future lost wages, $11,160 for medical bills, and $45,712 for noneconomic losses. Wackenhut moved for judgment as a matter of law, a new trial, or remittitur. Lulaj moved for costs and attorney's fees. The district court denied both Wackenhut's motion for a new trial and judgment as a matter of law, but reduced the damages award. Because the jury had found no constructive discharge, the judge eliminated the future lost wages, and limited back pay to $960 (representing the $6/hour difference in pay for the period between when the promotions occurred and when Lulaj left work). The court also held that there was no basis on which to calculate medical expenses and reduced that award to zero. Finally, the court granted Lulaj's motion for attorney's fees at a rate of $165 per hour totaling $49,500.

II

*A. Lulaj's Prima Facie Case for Discrimination*

Wackenhut first argues that Lulaj has not made out a case for discrimination, and therefore it is entitled to judgment as a matter of law. This Court reviews *de novo* the district court's decision to grant or deny a judgment as a matter of law. *Anchor v. O'Toole* 94 F.3d 1014, 1023 (6th Cir. 1996). Since this is a diversity case in which there is no dispute as to the choice of law, Michigan law, as the forum state, determines the standard for a directed verdict. *Wood v. Mid-Valley Inc.,* 942 F.2d 425, 426 (7th Cir. 1991). A directed verdict is proper where no prima facie showing of

evidence is made relating to each element required for liability. *Locke v. Pachtman*, 521 N.W.2d 786, 789 (Mich. 1994).

A discrimination case based on circumstantial evidence requires a showing that (1) Lulaj was a member of a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) the adverse action occurred under circumstances that gave rise to an inference of unlawful discrimination. *Lytle v. Malady*, 579 N.W.2d 906, 914 (Mich. 1998). Once this showing is made, a presumption of discrimination arises which the defendant can rebut by articulating a legitimate non-discriminatory reason. *Id*. at 915. The burden then shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the articulated reasons were a mere pretext for discrimination. *Id*. Under current Supreme Court precedents,[1] once evidence is adduced demonstrating that the employer's reasons are pretextual, the above framework falls away and the plaintiff must prove by a preponderance of the evidence that discrimination motivated the adverse employment action. *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 143 (2000). Furthermore, discrimination need not be the sole motivation for the plaintiff to recover: if discrimination is a "motivating factor" in the decision, the plaintiff may recover damages even based on circumstantial evidence alone. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003) (quoting 42 U.S.C. §2000e-2(m)).

It is undisputed that Lulaj is a member of a protected class (pregnant women) and that she is qualified for the supervisor job. We therefore consider only whether she suffered any adverse action and whether there was any nexus to discrimination.

Denial of a promotion is an adverse employment action. *Williams v. Pharmacia*, 137 F.3d 944, 948 (7th Cir. 1998). Wackenhut argues that Lulaj did not suffer any adverse employment action because she was offered a promotion: Wackenhut offered her a "Super-G" position that included higher pay and more responsibility than her current position, but less than the Supervisor position she sought. For the purposes of determining adverse action, it is irrelevant that Lulaj was offered a lesser promotion: she was denied a promotion that carried better pay and benefits than what she had and what she was ultimately offered. *See Boumehdi v. Plastag Holdings*, 489 F.3d 781, 791 (7th Cir. 2007)(recognizing that a denial of a raise constitutes a material adverse action); *Collum v. Brown*, 209 F.3d 1035, 1042 (7th Cir. 2000)(noting that a denial of promotion is adverse because it affects pay rate). A company cannot shield itself from liability for discrimination by offering an inferior promotion. We find that there was sufficient evidence for the jury to find adverse employment action in this case.

The adverse action must occur under circumstances that give rise to an inference of unlawful discrimination. *Lytle*, 579 N.W.2d 906, 914 (Mich. 1998). Wackenhut also argues that there is no nexus between Lulaj's pregnancy and the promotion decision. Wackenhut points to the fact that Lulaj informed the company of her pregnancy only four days before the promotion decisions were completed and claims that its promotion decisions could not therefore have been tainted. Lulaj however presented evidence on three points, (1) company managers were aware of her pregnancy long before she officially informed them, (2) the timing of the events suggests discrimination, and (3) the way her superior glanced at her stomach suggested that pregnancy was a factor in denying her promotion. Michigan does not accept timing in and of itself as proof of causality. *West v. General Motors,* 665 N.W.2d 468, 472-73 (Mich 2003); *Scott v. Total Renal Care, Inc.*, 194 Fed. App'x. 292, 301 (6th Cir. 2006)(holding, under Michigan law, "time-order is insufficient as a matter of law to establish a causal connection between an adverse employment action and protected

---

[1]The language of the Michigan act parallels that of 42 U.S.C. § 2000e, and where the two acts are similar, Michigan courts treat federal precedents as "persuasive, albeit not binding, authority." *Pena v. Ingham County Road Comm'n*, 660 N.W.2d 351, 358 n.3 (Mich. Ct. App. 2003). *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) created a framework for evaluating the sufficiency of a plaintiff's prima facie case in employment discrimination claims.

activity"). While this undermines one of Lulaj's points, the other two remain, and we find them a sufficient basis to make out a prima facie case for discrimination.

In response to this preliminary showing of discrimination, Wackenhut offered two legitimate, non-discriminatory reasons for its decision to promote others to the Supervisor position at Auburn Hills. All of the supervisors there had additional fire specialist certifications and had personal knowledge of that particular facility. Lulaj had neither.

Having articulated a non-discriminatory reason for its actions, Lulaj must produce evidence to "raise a triable question of fact that [the adverse action was] motivated by gender discrimination," and not the proffered legitimate reason. *Lytle,* 579 N.W.2d at 918. During trial, Lulaj offered two pieces of testimony which support a finding of discrimination by the jury. First, Lulaj was aware that her own supervisor did not have fire specialist training, and she believed that others had been promoted without specialist training. Second, she pointed to the fact that nothing had changed in her circumstances or the company's to justify reneging on the promised Supervisor position. The only intervening circumstance of which she was aware was her pregnancy. This evidence, if believed by the jury, undermines the legitimacy of the reasons offered by Wackenhut for promoting others and suggests that discrimination was the real motivation. We therefore find that Lulaj has raised sufficient evidence to support a claim of discrimination.

## B. Reduced Damage Award

The Seventh Amendment guarantees that "no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. CONST. amend. VII. This has long been held to preclude a court from substituting "its own estimate of the amount of damages which the plaintiff ought to have recovered, to enter an absolute judgment for any other sum than that assessed by the jury." *Kennon v. Gilmer*, 131 U.S. 22, 29 (1889); *Farber v. Massillon Bd. of Educ.*, 917 F.2d 1391, 1395 (6th Cir. 1990). There are two sources of authority whereby a judge may reduce an award of damages rendered by a jury without violating the Seventh Amendment. First, a judge may offer a prevailing plaintiff the option of either a new trial or a reduced award in a process known as remittitur. *Id.* Second, a court may render judgment as a matter of law as to some portion of a jury award if it is compelled by a legal rule or if there can be no genuine issue as to the correct calculation of damages. *See, e.g.,Westchester Fire Ins. Co. v. Hanley,* 284 F.2d 409, 418 (6th Cir. 1960) (reducing an award by twenty-five percent as required by contract where it was clear the jury had failed to do so); *EEOC v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1252-53 (11th Cir. 1997) (correcting a jury's calculation of the back pay owed to the plaintiff where once liability was found there was no issue as to the amount of damages).

In this case, the district court reduced two distinct portions of the jury award: front pay and back pay (including medical expenses). The district court reduced front pay to zero because the jury determined that Lulaj was not constructively discharged, and therefore, as a matter of law, front pay cannot be awarded. We find no error in this holding. "In a promotion case, the period of liability will end if plaintiff voluntarily quits his employment with the defendant absent a constructive discharge." *Equal Employment Opportunity Comm'n v. Monarch Mach. Tool Co.*, 737 F.2d 1444, 1453 (6th Cir. 1980) (citing SCHLEI and GROSSMAN, EMPLOYMENT DISCRIMINATION LAW 1240-41 (1974)). Furthermore, front pay is analogous to back pay in that it imagines the situation that gives rise to back pay continuing to some future date. *Smith v. World Ins. Co.,* 38 F.3d 1456, 1466 (8th Cir. 1994) (noting the logical relation between front pay and back pay). Thus it is equivalent to suing for back pay at that future date. "[I]n order for an employee to recover back pay for lost wages beyond the date of his retirement or resignation, the evidence must establish that the employer constructively discharged the employee." *Jurgens v. Equal Employment Opportunity Comm'n*, 903 F.2d 386, 389 (5th Cir. 1990).

The jury found that Lulaj was not constructively discharged. Voluntarily quitting her job tolls Lulaj's claims for back pay as a matter of law. Thus the district court was correct to reduce, as a matter of law, the jury award for front pay to zero to conform to its finding of no constructive discharge.

Similarly, the district court held that back pay was due only for the period between the denial of Lulaj's promotion and her decision to quit. Per our analysis of front pay, this decision was correct as a matter of law. Lulaj contends that the district court erred in reducing the back pay award to $960 – representing the difference in pay between the two positions over the period between her denied promotion and her voluntary departure – because it failed to consider the value of other benefits, such as medical insurance, provided to Supervisors but not to her. It is true that benefits are considered part of the overall compensation package in determining lost back pay. *Gutzwiller v. Fenik*, 860 F.2d 1317, 1333 (6th Cir. 1988) (holding that back pay "should include...sick leave, vacation pay, pension benefits and other fringe benefits she would have received but for discrimination). However, the district court determined that no evidence was offered upon which a fact-finder could base a pay calculation other than the difference in hourly wage. Because there was no evidence to support the jury's finding of damages beyond the wage difference, and because there is no issue as to the calculation of that wage difference, the district court was correct to reduce the award to $960 as a matter of law.

*C. Attorney's Fees*

An award of attorney's fees is reviewed for abuse of discretion. *Meyer v. City of Center Line*, 619 N.W.2d 182, 191 (Mich. Ct. App. 2000); *Jordan v. City of Cleveland*, 464 F.3d 584, 602 (6th Cir. 2006). Michigan law lays out non-exclusive factors that should be considered in the award of attorney's fees. It does not require that the trial court detail its findings as to each specific factor considered, but rather the award will be upheld unless the court's finding is an abuse of discretion. *O'Neill v. Home IV Care Inc.,* 643 N.W.2d 600, 604 (Mich.Ct.App. 2002) (citing *Wood v. Detroit Auto Inter-Insurance Exchange*, 321 N.W.2d 653 (Mich. 1982)). Wackenhut questions only the number of hours claimed in preparation for the case while Lulaj argues that the $165/hour rate used is inadequate given counsel's expertise (a recognized factor in determining pay rate). Calculation of fees will always involve some approximation, and the judge based his decision on his long experience as a judge and a private practitioner. We do not find any abuse of discretion in this case.

III

For the foregoing reasons we AFFIRM the district court's judgment.