NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0734n.06

No. 11-5507

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 09, 2012
LEONARD GREEN, Clerk

WILLIE RAYFORD,                               )
                                              )
    Plaintiff-Appellant,                  )
                                              )
                                              )    ON APPEAL FROM THE
    v.                                    )    UNITED STATES DISTRICT
                                              )    COURT FOR THE WESTERN
ILLINOIS CENTRAL RAILROAD,                    )    DISTRICT OF TENNESSEE
                                              )
    Defendant-Appellee.                   )
                                              )

BEFORE:    BATCHELDER, Chief Judge; GRIFFIN, Circuit Judge; and COHN, Senior
District Judge.[*]

COHN, Senior District Judge.

This is an employment case. Plaintiff-Appellant Willie Rayford ("Rayford") appeals from the district court's order granting Defendant-Appellee Illinois Central Railroad's ("IC") motion for judgment as a matter of law and denying Rayford's motion for new trial. Rayford sued IC, claiming gender discrimination, sexual harassment, and retaliation under Title VII, 42 U.S.C. § 2000e *et seq*. and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-301 *et seq*. Rayford also brought a state law claim for intentional infliction of emotional distress, commonly known as an "outrage" claim. As will be explained, the case went to trial. The jury was unable to reach a verdict and the district court declared a mistrial. The district court then granted IC's motion for judgment

---

[*]The Honorable Avern Cohn, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

as a matter of law, noting that the evidence at trial did not comport with the evidence presented at the summary judgment stage. On appeal, Rayford argues that (1) the district court erred in granting IC's motion for judgment as a matter of law and (2) the district court abused its discretion in denying his motion for a new trial. For the reasons that follow, the district court will be affirmed.

## I. Background

Rayford has worked as an electrician for IC since January 2007. He is still employed by IC at its Memphis locomotive repair center, the Horn Lake Road Facility.

On July 14, 2007, Rayford was talking with co-workers Brian Allison ("Allison") and Brandon Smith ("Smith"). During their conversation, a supervisor, Raymond Pornovets ("Pornovets"), approached Rayford and whispered inappropriate comments about his (Pornovets') sexual exploits with a woman.

About a week later, on July 24, 2007, Rayford reported the incident to Phillip Yourich ("Yourich"), the manager at the facility. Yourich told Rayford to prepare a written statement describing the incident, which he did. Yourich then began an investigation which included interviewing Allison, Smith, and Pornovets. Pornovets admitted his misconduct.

On July 28, 2007, Rayford met with Yourich and a union official and was informed that Pornovets was prepared to give him an apology. Rayford declined the apology. At that point, Yourich brought the matter to the attention of his supervisor, Randy Hilliard, and Duane Spears ("Spears"), a manager in IC's human resources department.

Eventually, on August 4, 2007, IC terminated Pornovets's employment based on his conduct toward Rayford, which was in violation of IC's harassment policy. After his termination, Pornovets

2

attempted to use union superiority to return to a non-supervisory position. Yourich rejected his request.

Nine months later, on April 18, 2008, Rayford received a "letter of caution" for failing to secure a heater to the wall of a locomotive. Although Rayford disagreed with the discipline, he did not file a grievance regarding the issue.

At trial, Rayford testified that after the incident with Pornovets, other co-workers teased him about it, including making what he believed were inappropriate comments. However, Rayford did not report any conduct related to his co-workers to a supervisor.

On September 4, 2007, Rayford filed a charge of discrimination with the EEOC, asserting sex discrimination and sexual harassment regarding the incident with Pornovets and claiming co-worker harassment. Rayford later filed a complaint against IC, making the claims noted above.

IC eventually filed a motion for summary judgment, contending that Rayford's (1) THRA claim is time-barred, (2) discrimination and harassment claims fail on the merits, (3) outrage claim is time-barred and fails on the merits, and that (4) Rayford failed to exhaust his administrative remedies regarding his retaliation claim and the claim fails on the merits. The district denied the motion on the grounds that Rayford had submitted evidence to create a genuine issue of fact as to each claim. The evidence attached to Rayford's response consisted of Rayford's affidavit and deposition testimony, Yourich's deposition testimony, Allison's affidavit.

The case proceeded to trial over the course of three days. Rayford, Yourich, Allison, Spears, and Rayford's wife testified at trial. At the close of Rayford's proofs, IC moved for judgment as a matter of law. The district court granted the motion with respect to Rayford's retaliation claim and

reserved ruling on the remaining claims.  At the close of all the proofs, IC again moved for judgment as a matter of law; the district court reserved ruling on the motion.

After several hours of deliberations over the course of an afternoon and the following morning, the jury sent a note which read:  "We the jury are confident that we are unable to reach a unanimous."  Rayford's counsel then requested the jury be polled in open court regarding whether each juror believed that further deliberations would enable them to reach a verdict.  Each juror responded in the negative.  The district court then declared a mistrial.

Following the mistrial, Rayford moved for a new trial on the grounds that the district court failed to clarify the meaning of the jury's note and failed to give an *Allen*[1] charge.  The district court denied Rayford's motion for a new trial and granted IC's motion for judgment as a matter of law.

## II.  Discussion

### A.  Motion for Judgment as a Matter of Law

#### 1.  Standard of Review

This Court reviews *de novo* a district court's decision to grant or deny a motion or renewed motion for judgment as a matter of law.  *See Lulaj v. Wackenhut Corp.*, 512 F.3d 760, 764 (6th Cir. 2008)*.*  "If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for that party on that issue," a judgment as a matter of law for the opposing party is appropriate.  Fed. R. Civ. P. 50(a)(1).  A court may not grant the motion if reasonable minds could reach different conclusions from the

---

[1]*See Allen v. United States*, 164 U.S. 492, 501 (1896).

4

evidence. *See McJunkin Corp. v. Mechs., Inc.*, 888 F.2d 481, 486 (6th Cir. 1989). When engaging

in this review, we use the same standard applied by the district court. *Phelps v. Yale Sec.*, 986 F.2d

1020, 1023 (6th Cir. 1993). "The evidence should not be weighed. The credibility of the witnesses

should not be questioned. The judgment of this court should not be substituted for that of the jury."

*Schwartz v. Sun Co., Inc.*, 276 F.3d 900, 903 (6th Cir. 2002) (quoting *K & T Enters. v. Zurich Ins.*

*Co.*, 97 F.3d 171, 175-76 (6th Cir. 1996)). Moreover, the fact that a jury could not reach a verdict

does not prevent a court from granting judgment as a matter of law. *See* 9B Wright, Miller & Kane,

*Federal Practice and Procedure*§ 2537, at 627-28, (3d ed. 2008).

## 2. Application

Rayford contends that the district court erred in ruling that he failed to make out a case for

gender discrimination and sexual harassment and in finding that IC was entitled to a defense to the

harassment claim. IC argues that the district court property concluded that Rayford's Title VII claim

based on either gender discrimination or sexual harassment fails as a matter of law and that Rayford

failes to establish IC's liability for any of the harassment.

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against

an individual "with respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §

2000e-2(a)(1). In this case, Rayford is alleging same-sex harassment by his supervisor as well as co-

worker harassment. As to the former, the Supreme Court has held that same-sex harassment is

actionable under Title VII under certain circumstances. *See Oncale v. Sundowner Offshore Servs.,*

*Inc.*, 523 U.S. 75, 82 (1998). The Supreme Court further explained that a claim of sexual harassment

does not lie "merely because the words used have sexual content or connotations." *Oncale*, 523 U.S. at 80. Rather, "[t]he critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* (citing *Harris v. Forklift, Sys., Inc.,* 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)).

In order to bring a sexual harassment claim based on a hostile working environment, a plaintiff must show the following: (1) the employee was a member of a protected class; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and (5) the existence of employer liability. *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347 (6th Cir. 2005).

Rayford does not meet this standard for several reasons. First, he did not present any evidence at trial that Pornovets or his co-workers targeted him for harassment because of his sex. Thus, his claim fails under the third element. While Rayford testified he was "unaware" of whether Pornovets made similar comments to a female employee and noted that IC never received a complaint from a female employee, neither point shows that Rayford was subjected to the remarks because of his sex. Rayford also failed to offer evidence that Pornovets was making a sexual advance or otherwise engaged in gender-focused sexual behavior. As to his co-workers, Rayford testified that the alleged inappropriate comments were not directed at him because of his sex, but rather were designed to make fun of him and "no other reason." (R. 99 - Trial Transcript, at 287). Simply stated, Rayford's gender had nothing to do with the improper remarks by either Pornovets or his co-workers.

Second, Rayford did not establish that the harassment created a hostile working environment required under the fourth element.  In other words, even if the harassment was based on Rayford's sex, it still must be severe and pervasive to be actionable.  In evaluating the severity and pervasiveness of workplace harassment, this court considers the totality of the circumstances.  *See Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).  Relevant circumstances include the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.  Viewed as a whole, the environment must be both objectively and subjectively offensive, hostile, and abusive.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to" a hostile work environment.  *Id*. at 788 (internal quotation omitted, parenthetical in original).  Rather, "conduct must be extreme to amount to a change in the terms and conditions of employment." *Id*.  This court has consistently rejected any invitation to convert Title VII into a "code of workplace civility." *Grace v. USCAR & Bartech Tech. Servs., LLC*, 521 F.3d 655, 679 (6th Cir. 2008)

While Rayford argues on appeal that he was subjected to several instances of continued sexual harassment, the trial testimony was decidedly different.  Rayford testified that the incident with Pornovets was the *only* time a supervisor made a sexually inappropriate comment to him.  (R. 99 - Trial Transcript, at 260-61).  He also identified only three comments from co-workers that he

7

says were harassing:[2] (1) he was called "sweet booty;" (2) he was told Pornovets "wanted to mix coffee with his cream;" and (3) he was told "Ray got a big dick for me." (*Id*. at p. 230). Although Rayford testified on direct examination that the comments occurred three or four times a week, he was unable to explain on cross examination the length of time over which the comments occurred or any other specifics. Rayford also called his co-worker, Allison, to support his allegations of co-worker comments. However, at trial, Allison could not recall any specific comment made to Rayford.

Moreover, Rayford did not present any evidence indicating that any of the alleged incidents of harassment interfered with his work performance. While Rayford testified that he had difficulty concentrating at times, he also testified he was able to work regularly and continuously and perform his job duties. This is not sufficient to show interference with work performance.

Overall, the incident with Pornovets and the three identified comments by co-workers were not so severe and pervasive that a reasonable person would find his work environment hostile and abusive. The comments, while inappropriate, do not rise to the level of sexual harassment. Because a reasonable jury could not have concluded otherwise, the district court was correct in finding that Rayford failed to establish he was discriminated against because of his gender or the victim of sexual harassment.

---

[2]Although the district court found that Rayford was only subjected to harassment by Pornovets, we have also considered the incidents of co-worker harassment Rayford testified to at trial. In the end, it makes no difference because neither the incident with Pornovets nor all of the instances taken together rise to the level of actionable sexual harassment.

The district court further concluded that even if the conduct was actionable as discrimination or harassment, IC was entitled to a defense based on its response to the conduct of which Rayford complained. We agree. As noted above, Rayford must establish liability on the part of IC in order to prevail. The Supreme Court has ruled that employers are not automatically liable for sexual harassment perpetrated by their employees. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher,* 524 U.S. 775 (1998). Where an employee is the victim of sexual harassment in the form of a hostile work environment by a co-worker, an employer's liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action. *See Faragher*, 524 U.S. at 789. Where the harassment is attributed to a supervisor, a court looks first to whether the supervisor's behavior "culminate[d] in a tangible employment action" against the employee. *Ellerth*, 524 U.S. at 765. If so, the employer will be liable. *See Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 275 (6th Cir. 2009). If there has been no tangible action, an employer will be liable for a hostile work environment created by a supervisors unless it establishes as an affirmative defense that (a) it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (b) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth,* 524 U.S. at 765; *accord Faragher*, 524 U.S. at 807.

As to co-worker harassment, Rayford conceded that he did not report any of the comments to a supervisor at IC. Yourich also testified at trial that he followed up with Rayford after the incident with Pornovets, and Rayford told him everything was fine. Rayford does not dispute

9

Yourich's testimony. While Rayford argues that based on his EEOC charge, IC was on notice of co-worker harassment, he offers no support for the proposition that statements in an EEOC charge equate to the required notice. Moreover, Yourich and Spears both testified at trial that IC hired an outside firm to investigate Rayford's EEOC charge, who contacted relevant witnesses and was asked to report any problems it uncovered. No problems were reported to IC. On the trial record, no reasonable juror could find that IC acted indifferently to Rayford's co-worker complaints, particularly because Rayford did not report any incidents of co-worker harassment to IC.

Regarding Pornovets, it is clear that IC is entitled to a defense. Once Rayford reported the incident, IC began an investigation and found Pornovets had engaged in inappropriate conduct. IC attempted to resolve the incident by having Pornovets apologize to Rayford. When that was unsuccessful, IC terminated Pornovets 10 days after the incident was reported. IC took all appropriate action. No reasonable juror could conclude otherwise.

Overall, the evidence presented at trial failed to establish that Rayford was the victim of gender discrimination or sexual harassment. To the extent he was, IC is entitled to a defense based on the steps it took upon learning of the complained of conduct. There is no other reasonable conclusion to be drawn from the record. Accordingly, the district court correctly entered judgment as a matter of law in favor of IC.

### B. Motion for a New Trial

### 1. Standard of Review

This court reviews the denial of a party's motion for a new trial under Fed. R. Civ. P. 59 for an abuse of discretion. *See Davis v. Jellico Community Hospital, Inc.*, 912 F.2d 129, 132-33 (6th

Cir. 1990). "An abuse of discretion occurs when the district court relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard." *Mike's Train House, Inc. v. Lionel LLC*, 472 F.3d 398, 405 (6th Cir. 2006). A court "may grant a new trial under Rule 59 if the verdict is against the weight of the evidence, if the damages award is excessive, or if the trial was influenced by prejudice or bias, or otherwise unfair to the moving party." *Rush v. Illinois Cent. R.R. Co.*, 399 F.3d 705, 727 (6th Cir. 2005). A new trial is required when the original "trial [was] unfair to the moving party in some fashion." *Mike's Train House, Inc*., 472 F.3d at 405.

## 2. Application

Rayford first argues that he is entitled to a new trial based on the way in which the district court handled a note from the jury. As noted above, the jury submitted a note stating: "We the jury are confident that we are unable to reach a unanimous." (R. 86). Rayford contends that the note is unclear because it contains a sentence fragment and the district court should have clarified its meaning before proceeding further. This argument is not supported by the record. While grammatically the note is deficient because it does not contain the word "verdict," "decision" or the like after "unanimous," the note is not confusing; the word "verdict" or "decision" is clearly implied. Moreover, the district court alleviated any possible confusion when the jury was polled in open court, as Rayford's counsel requested. The district court brought the jury in and told them to respond to the following question: "do you believe that further discussions might enable you to reach a unanimous agreement?" (R. 102 - Trial Transcript, at 749). Each juror responded in the negative. Thus, Rayford is not entitled to a new trial based on any confusion regarding the jury's note.

11

Rayford, however, also says that the record fails to indicate that the jury was hopelessly deadlocked and suggests that the district court should have given an *Allen* charge. This argument does not carry the day. After each juror responded that further deliberations would not result in unanimous agreement, the district court directed the jury to return to the jury room. The district court then asked counsel for their input as to the next steps. Rayford's counsel requested that the jury be asked what its disagreement was about, *i.e.* to see if they agreed on any question and if so, to take a partial verdict. IC's counsel would not agree to a partial verdict and essentially asked that the jury cease deliberations as they were deadlocked. The district court then brought the jury in and declared a mistrial, concluding that the jurors were unable to reach a verdict. The district court's conclusion was reasonable based on the jury's note and the polling. It certainly was not an abuse of discretion.

As to an *Allen* charge, while Rayford's counsel raised the issue of an *Allen* charge before the district court, counsel did not specifically request that an *Allen* charge be given. Given the jury's unanimous responses regarding their inability to reach a verdict, it was not an abuse of discretion for the district court to declare a mistrial instead of giving an *Allen* charge or otherwise directing the jurors to continue deliberations.

Finally, although not specifically challenged on appeal, the district court did not abuse its discretion in granting a mistrial. A district court's decision "to declare a mistrial when he (or she) considers the jury to be deadlocked is accorded great deference by a reviewing court since the trial court is in the best position to assess whether the jury can reach a just verdict if it continues to

deliberate." *In re Ford*, 987 F.2d 334, 339 (6th Cir. 1992).  Based upon the jury's note and polling

in open court, it cannot be said that the district court abused its discretion in declaring a mistrial.

## III.  Conclusion

For the reasons stated above, the district court's decisions granting IC's motion for

judgment as a matter of law and denying Rayford's motion for a new trial are AFFIRMED.